# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

BETHANY R. SCRIVNER,            )
                                )
       Plaintiff,       )
                                )
v.                              )   Case No. CIV-08-008-SPS
                                )
MICHAEL J. ASTRUE,              )
Commissioner of the Social      )
Security Administration,        )
                                )
       Defendant.       )

## OPINION AND ORDER

The claimant Bethany R. Scrivner requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and REMANDED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take

---

[1] Step one requires the claimant to establish she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work the claimant can perform existing in significant numbers in the national economy, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on March 2, 1972, and was thirty-five years old at the time of the administrative hearing. She has a tenth grade education and previously worked as a waitress. The claimant alleges she has been unable to work since November 1, 2003, because of status post gunshot wound to the neck, chronic back and neck pain, severe depression, history of polysubstance abuse and pain and neuropathy of her right hand, arm and shoulder.

## Procedural History

On February 16, 2005, the claimant protectively filed an application for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. The application was denied. ALJ John Volz conducted a hearing and determined the claimant was not disabled on August 3, 2007. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform a full range of sedentary work, *i. e.*, that she could lift and/or carry no more than ten pounds; stand and/or walk for two hours in an eight-hour workday; and sit for six hours in an eight-hour workday.

The claimant was further "limited to simple tasks that d[id] not involve repetitive interactions with co-workers." (Tr. 25). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform existing in significant numbers in the regional and national economies, *e. g.*, food order clerk, escort driver, checker/inspector, parts masker/polisher and assembler (Tr. 29).

**Review**

The claimant contends that the ALJ erred: (i) by failing to find she met a Listing; and, (ii) by finding she had the RFC to perform substantial gainful activity. As part of her second contention, the claimant argues that the ALJ failed to properly address the limited use of her right arm and shoulder in the RFC determination. The Court finds this contention persuasive.

The record reveals that the claimant was shot in the neck in November 2003. Several bullet fragments were removed through surgery, but others could not be removed and still remained. Shortly after the injury, the claimant complained of "right shoulder and entire right arm pain." She described the pain as severe at times and tingling on other occasions. It was noted that the right arm pain was likely related to "bullet vibration injury." (Tr. 169-70). At a post-surgery follow-up visit the claimant complained of right arm numbness and tingling, but she retained full grip strength (Tr. 175). In December 2003, the claimant reported arm and shoulder pain that "comes and goes." On the day of her office visit, the neck/shoulder/arm area was painful to the touch. She was referred to neurology and for pain management (Tr. 185). By January 2004, the claimant reported she was able to write with

he right hand but she had no feeling in the right arm and shoulder (Tr. 181). The claimant indicated her medication Neurontin was no longer helping in August 2004. She had pain in her right shoulder with a limited range of motion. It was recommended the claimant undergo physical therapy on her shoulder (Tr. 189-90, 231-32). At therapy in September 2004, the claimant described her pain as burning and shooting (Tr. 230). By November 2004, the claimant still was experiencing decreased range of motion of the cervical spine and the right shoulder (Tr. 227-28). The claimant continued to experience pain in January 2005 (Tr. 224-25).

In May 2005, the claimant underwent a physical examination with consulting physician Dr. Ravinder R. Kurella, M.D. She complained of right shoulder and neck pain. Examination revealed a full range of motion of the claimant's back, neck, bilateral hip, knee joints, elbow and wrist joints, but the claimant had "significant restriction of range of motion of her right shoulder associated with pain." (Tr. 193-99). The claimant continued to suffer shoulder pain in August 2005. She was experiencing numbness and tingling in the extremities and swelling of the joints. The claimant was assessed, *inter alia*, with chronic neck pain secondary to gunshot wound and right shoulder pain with impaired sensation (rule out sympathetic dystrophy) (Tr. 211-13). In October and December 2005, the claimant was noted to be suffering from right neck and arm pain (Tr. 215-16). By May and June 2006, the claimant was assessed with chronic neck and right shoulder pain and was to continue on her pain medication (Tr. 278-79). In August 2006, it was noted that the claimant "ha[d] severe peripheral neuropathy of her right side, hands and neck area." She was assessed with

neuropathy of the right shoulder and right arm (Tr. 248-49). The claimant went to the Muskogee Regional Medical Center in October 2006 complaining of right side numbness and pain (Tr. 233-34). In January 2007, she was assessed with chronic neck, right shoulder, and low back pain (Tr. 268). During a May 2007 psychological evaluation with Dr. Minor W. Gordon, Ph.D., the claimant indicated to Dr. Minor that she "[was] partially paralyzed in [the] right arm and . . . [had] permanent nerve damage in [the] right shoulder and arm." When asked how this impeded the use of her right hand and arm, the claimant responded that she could not lift over ten pounds, could not lift her arm over her head and that her arm shook "all the time." She was able to write (Tr. 281).

The ALJ discussed some of the evidence with regard to the claimant's difficulties with her right shoulder and arm. He mentioned the claimant's statements to Dr. Gordon about her use of her arm and shoulder and Dr. Kurella's finding that she had a significant restriction in range of motion of the right shoulder (Tr. 27). But the ALJ failed to discuss evidence that the claimant was assessed with neuropathy of the right shoulder and arm (Tr. 211-13, 248-49). This evidence was "significantly probative" and should have been discussed by the ALJ. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). *See also Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) (remanding "for the ALJ to articulate specific findings and his reasons for ignoring . . . evidence."). It may well be that the

evidence of neuropathy in the claimant's right shoulder and arm has little effect on the ALJ's RFC determination, but the Court is in no position to make such a determination for the ALJ. *See Drapeau v. Massanari,* 255 F.3d 1211, 1214 (10th Cir. 2001) (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan,* 933 F.2d 598, 603 (7th Cir.1991). *See also Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.") [citations omitted].

Accordingly, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis of the claimant's RFC. If the ALJ subsequently determines that additional limitations should be included in the claimant's RFC, he should then redetermine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

As set forth above, the Court finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED and the case REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED** this 31st day of March, 2009.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**